UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALLISON SCHULZ,

                    Plaintiff,

       v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration

                    Defendant.

Case No. C10-1883-RSL-BAT

**REPORT AND RECOMMENDATION**

Allison Schulz seeks review of the denial of her Disability Insurance Benefits application. The Court agrees with Ms. Shultz's contention that the ALJ erred in rejecting the opinions of her treating physician, John Peng, M.D and that if the ALJ had accepted the doctor's opinions, the ALJ would have been required to find Ms. Schulz disabled. Dkt. 13. Therefore, as discussed below, the Court recommends the Commissioner's decision be **REVERSED** and **REMANDED** for award of benefits.

## PROCEDURAL HISTORY

Ms. Schulz is currently 40 years old, has a high school degree, and has worked as a retail sales clerk and manager, customer service representative, and waitress.[1] On September 21, 2007,

---

[1] Tr. 123, 36, 174-80.

REPORT AND RECOMMENDATION - 1

she applied for benefits, alleging disability as of May 24, 2007. Tr. 123. Her application was denied initially and on reconsideration.[2] After conducting a hearing on December 7, 2009, the ALJ found Ms. Schulz not disabled. Tr. 10. As the Appeals Council denied Ms. Schulz's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ made the following findings:

**Step one:** Ms. Schulz had not worked since March 31, 2008.

**Step two:** Ms. Schulz had the following severe impairments: migraine headaches and Hashimoto's encephalopathy.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity:** Ms. Schulz could perform less than the full range of sedentary work. She has occasional postural limitations; she should not climb ladders, ropes, or scaffolds. She is limited to occasional overhead reaching, and should avoid concentrated exposure to heat, cold, and vibration. She can perform simple and some complex tasks.

**Step four:** Ms. Schulz could perform her past work as an "appointment clerk."

**Step five:** Alternatively, as there are jobs Ms. Schulz can perform, she is not disabled.

Tr. 15-18.

## DISCUSSION

**A.      The ALJ's evaluation of Dr. John Peng's opinions**

Dr. John Peng, M.D. has treated Ms. Schulz since 2001. Tr. 596. Dr. Peng opined in August 2007, that Ms. Schulz could not work until her stroke-like symptoms stabilized. Tr. 468.

---

[2] Tr. 77, 82.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

Later, in 2009, he opined Ms. Schulz had the physical ability to perform sedentary work but due to intermittent and unpredictable strokes and migraines, she qualified for "FMLA intermittent leave up to 5X/month (estimated)." Tr. 597. Ms. Schulz argues the ALJ erred in rejecting Dr. Peng's opinions.

An ALJ must give clear and convincing reasons to reject a treating physician's opinion where not contradicted by another physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Here, the ALJ accepted Dr. Peng's opinion that Ms. Schulz had the physical ability to perform sedentary unskilled or semiskilled work but rejected the doctor's opinion that Ms. Schulz would miss work due to migraine headaches. As grounds, the ALJ stated "[t]he medical evidence of record does not support his contention that her symptoms would require her to miss up to 5 workdays per month." Tr. 18. This is not a specific and legitimate reason to reject the opinion. To simply say a medical opinion is not supported by the medical evidence is a conclusory statement and not an adequate reason to reject the opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

The Commissioner contends, however, that the ALJ gave additional reasons to reject Dr. Peng's opinions. The Commissioner argues the ALJ discussed the opinions of Dr. Peng, Dr.

REPORT AND RECOMMENDATION - 3

Steven Singer, M.D., and reviewing doctor Guthrie Turner, M.D., and that based on the opinions of these doctors, the ALJ properly rejected Dr. Peng's opinion that Ms. Schulz would miss work up to five times a month. Dkt. 14 at 14. Substantial evidence does not support this contention.

The ALJ found the medical evidence provided some basis for Ms. Schultz's migraine headache pain. In regards to Dr. Peng's records, the ALJ found the doctor's records showed Ms. Schulz's migraine headaches were responsive to intravenous dilaudid. Tr. 17. This finding suggests the ALJ believed that Ms. Schulz's headaches were well controlled or prevented by dilaudid. But the medical records the ALJ relied upon show otherwise. Those records, which were created by Dr. Peng, state:

> ASSESSMENT: acute right face and right arm weakness during acute status migranous past few days. Pt. has complicated hemiplegic migraine history. Only IV or IM dilaudid is effective during her acute flares, intolerant of demerol and morphine. I have given her adequate po dilaudid, but it's not effective for these acute hemiplegic episodes.
>
> PLAN: I've recommended she have a family member drive her downtown to vmmc ER for IV/IM dilaudid injection and hopefully can abort the headache and resolve the hemiplegia. If not, admission with repeat neuro consult.

Tr. 543. These records do not undermine Dr. Peng's opinion that Ms. Schulz's migraines would cause her to miss work five times a month. First they show Ms. Schulz's migraine headaches are so severe that when she has an acute attack, she cannot get relief unless she receives intravenous dilaudid at the emergency room. Second, they show intravenous dilaudid is effective when Ms. Schulz has an acute flare-up. In other words, Ms. Schulz receives intravenous dilaudid but only after she has an acute episode. Third, given the fact Ms. Schulz receives dilaudid after an acute attack, there is no evidence the drug prevents, controls, or cures her migraines. And lastly, the fact that Ms. Schulz must go to an emergency room to receive intravenous dosages is strong

REPORT AND RECOMMENDATION - 4

evidence that her work attendance would be disrupted.

Turning to the opinions of treating physician Steven Singer, M.D., the ALJ found his records "confirmed that intravenous dilaudid has helped, and also indicated that the claimant has not fully complied with treatment protocols such as taking B vitamins." Tr. 17. This finding suggests Dr. Singer believed Ms. Schulz's migraines were well managed with dilaudid and that her symptoms were a result of her failure to take vitamin pills. Dr. Singer's records do not support these conclusions. Rather, Dr. Singer stated Ms. Schulz "has a very significant chronic problem." Tr. 483. She has episodes that "have brought her to the ER frequently in the past [and] have been very concerning to all parties looking like a stroke." *Id.* "She used to have episodes that brought her into the ER every six or eight weeks and now it is every four to six weeks. Her headaches are often treated more frequently than this however. She gets perhaps four to six a month where she has to take Dilaudid or other medicines like phenergen." "I have asked her to keep a record of her headaches. I have asked her to take B2, magnesium and CoQ10. She is not taking these at the present time. These supplements do seem to help patients with this kind of spreading depression or hemiplegic migraines." *Id.*

Dr. Singer's records are consistent with Dr. Peng's opinions—that Ms. Schulz's migraines are severe and chronic, that she has acute attacks multiple times each month, and that she requires dilaudid to obtain relief from these attacks. Dr. Singer's records also do not establish Ms. Schulz failed to comply with treatment. Rather, the doctor noted in his records that he asked Ms. Schulz to keep a record of her headaches and to take vitamins, not that she had failed to follow through with prior treatment requests. Additionally, Dr. Singer makes no mention elsewhere in his records that Ms. Schulz was not being compliant with treatment.

And finally, the ALJ discussed the opinions of reviewing physician Guthrie Turner, M.D.

Tr. 18.  Dr. Turner reviewed a physical residual functional capacity assessment prepared by Disabilities Determination Services (DDS) and agreed with DDS's assessment that Ms. Schulz had the physical capacity to perform light work.  Tr. 18.  There are several reasons why Dr. Turner's opinion is not a sufficient basis to reject Dr. Peng's opinions.  First, Dr. Turner is a nonexamining physician.  The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506, n.4 (9th Cir. 1990).

Second, while an ALJ may reject the opinion of a treating physician based in part on the opinions of a nonexamining physician, the ALJ may only do so if there is other substantial evidence that supports ALJ's decision such as test results, or contrary reports from examining physicians.  *See Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989).  As discussed above, the other medical opinions discussed by the ALJ support, rather than undermine, Dr. Peng's opinions.

And third, the DDS assessment that Dr. Turner approved focused on Ms. Schulz's physical abilities.  The assessment contains a check-list of exertional, postural, manipulative, visual, communicative and environmental limits but does not contain a check-list addressing non-exertional limitations such as pain.  Tr. 406-10.  The assessment stated "from a physical-functioning point of view clt appears capable of light-level work parameters with suitable precautions re transient neurological dysfunction 2/2 migraine mechanism, e.g. ladders, DMM exposure."  Tr. 413.  While this assessment discusses Ms. Schulz's physical or exertional limitations, it omits any discussion about her non-exertional limitations such as migraine pain.  Hence, the DDS assessment provides no basis to reject Dr. Peng's opinion that due to migraine headache pain–a non-exertional limitation–Ms. Schultz could be expected to miss work five

times a month.

The Court thus concludes the ALJ erred in rejecting Dr. Peng's opinions. The Court also concludes the ALJ's error was not harmless. Error is harmless only if the Court "can confidently conclude that no reasonable ALJ, when not making the same error as the ALJ, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Because none of the reasons the ALJ gave to reject Dr. Peng's opinion are supported by substantial evidence, the Court reviews the ALJ's error under the *Stout* standard. Here, the vocational expert testified that if Ms. Schulz missed work five days a month due to migraine headaches, her absenteeism would preclude her from performing the sedentary jobs the expert testified she could perform. Tr. 72. Under these circumstances, the ALJ's rejection of Dr. Peng's opinions was not harmless.

Ms. Schulz argues that the ALJ's failure to properly credit Dr. Peng's opinions calls for an award of benefits. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). This occurs when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *Id.* at 1076-77. The Court finds that these requirements have been met. As discussed above, the ALJ failed to provide legally sufficient reasons to reject Dr. Peng's opinions. Dr. Peng has treated Ms. Schulz since 2001. He opined an MRI showed she has multifocal white matter changes consistent with migraines and that her migraines would cause

her to miss work five times a month. Tr. 596. Dr. Singer is Ms. Schulz's treating neurologist. He opined that Ms. Schulz's migraines are a significant chronic problem and that she had multiple attacks each month requiring dilaudid treatment. The medical record regarding Ms. Schulz's migraines is thus well documented, spans years of treatment, and needs no further development.

It is also clear that based on Dr. Peng's opinion, the ALJ would be required to find Ms. Schulz disabled. The ALJ found Ms. Schulz had the residual functional capacity to meet the physical and mental demands of less than sedentary work. But this finding does not account for Ms. Schulz's inability to perform sustained work in an ordinary setting. A claimant's residual functional capacity "is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p (emphasis omitted); *see also* 20 C.F.R. § 404.1545. The vocational expert testified that if Ms. Schulz missed work five times a month due to migraine headaches, she would be precluded from performing the jobs he identified she was capable of performing. In other words, she would not be able to do sustained work in an ordinary work setting on a regular basis. Hence, had the ALJ accepted Dr. Peng's opinions, she would have been required to find Ms. Schulz disabled. Accordingly, the Court concludes the case should be remanded for an award of benefits.

**B.      Other claims raised by Ms. Schulz**

Ms. Schulz also contends the ALJ erred in discounting her credibility, erred in finding she had past relevant work as an appointment clerk, and erred in finding she could work as a telephone solicitor without citing any transferable skills. Because the Court concludes this case should be remanded for an award of benefits based on the ALJ's failure to properly credit Dr. Peng's testimony, Ms. Schulz's remaining claims need not be addressed at this point.

REPORT AND RECOMMENDATION - 8

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for an award of benefits. Any objections to this Recommendation must be filed and served upon all parties no later than **August 24, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal. A proposed order accompanies this Report and Recommendation.

DATED this 10th day of August, 2011.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge